Howard BATEMAN and Marguerite B.
Jones, Partners, trading as Ernest
Jones Co.

v.

**FORD MOTOR COMPANY.**

Civ. A. No. 30743.

United States District Court
E. D. Pennsylvania.

April 18, 1962.

Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for plaintiffs.

Dilworth, Paxson, Kalish, Kohn & Dilks, Philadelphia, Pa., for defendant.

JOHN W. LORD, Jr., District Judge.

This action was brought in this Court for an injunction and damages under the "Dealer's Day in Court Act," 15 U.S.C.A. §§ 1221–1225. Plaintiffs sought to restrain termination of their franchise to sell and service Ford Motor products. Since the agency has been terminated by Ford Motor Company during the pendency of the action, they now seek (in addition to their claim for damages; not presently at issue) to enjoin defendant from refusing to furnish Ford Motor products to them.

The prior opinion and order of this Court, dated January 23, 1962, D.C., 202 F.Supp. 545, held that since the Act provided specific remedies in damages, but none by way of injunction, the statutory remedies were exclusive.

■■ Appeal from that January 23 order is pending in the United States Court of Appeals, No. 13,901. Notice is taken of the fact that an opinion has been rendered in that appeal reversing this Court. In that opinion it was held that this Court has the power to grant supplemental equitable relief, and might utilize such power to keep a dealer's business going while his legal claim is being tested. It is also a matter of notice that the Ford Company, as appellee, has filed a petition for rehearing in that case, No. 13,901.

Despite the pendency of that appeal, the cause was set down for hearing in

this Court in response to plaintiffs' assertions of threatened irreparable injury. Testimony was heard on April 13, and the arguments of counsel were concluded April 17th. Having considered the testimony of plaintiffs' witnesses; the arguments and briefs of counsel; and the proposed findings of fact and conclusions of law submitted by the parties; this Court is now in position to rule on the matter in response to defendant's motion to dismiss at the close of the testimony offered by plaintiffs.

In its opinion, filed on March 28, 1962, 302 F.2d 63, the United States Court of Appeals said at page 66, with reference to the statute in question:

" * * * The statute may be viewed as writing into every dealer franchise agreement a term that the manufacturer will not terminate the relationship in bad faith. In any event, the bare fact that Congress by statute has provided a right at law without express provision for injunctive relief does not preclude the exercise of the general powers of a court of equity."

Plaintiffs allege that the Ford Motor Company has terminated their dealership in Ford Motor Company products in bad faith; that defendant Ford, from and after November, 1958, has failed to act in a fair and equitable manner toward the partnership; has arbitrarily and capriciously increased car quotas; has been guilty of coercion and intimidation; and has harrassed the plaintiffs by threatening to terminate the franchise agreement from time to time.

To express it in less legalistic terms, plaintiffs say that defendant Ford, through its regional sales managers, has used undesirable and discriminatory high-pressure methods in trying to force the plaintiffs to sell many more cars than they can dispose of without recourse to unconscionable sales practices. In the alternative, they suggest that Ford has been trying to force plaintiffs to surrender and sell out the franchise and agency to Ford at an unrealistic price in order that Ford may place the agency in the hands of another dealer of Ford's own choosing.

In addition to providing a remedy in damages for the dealer, the statute provides a defense for the manufacturer, 15 U.S.C.A. § 1222, and a definition of terms in § 1221(e) as follows:

Section 1222. "An automobile dealer may bring suit [for damages and costs] * * * sustained * * * by reason of the failure of said automobile manufacturer * * to act in good faith in performing or complying with any of the terms or provisions of the franchise, or in terminating, canceling, or not renewing the franchise with said dealer: *Provided,* That in any such suit the manufacturer shall not be barred from asserting in defense of any such action the failure of the dealer to act in good faith.

\* \* \* \* \* \*

Section 1221(e). "The term 'good faith' shall mean the duty of each party to any franchise, and all officers, employees, or agents thereof to act in a fair and equitable manner toward each other so as to guarantee the one party freedom from coercion, intimidation, or threats of coercion or intimidation from the other party: *Provided,* That recommendation, endorsement, exposition, persuasion, urging or argument shall not be deemed to constitute a lack of good faith."

The principal witness was Howard Bateman, one of the plaintiffs and the sole operating partner of the business. Plaintiffs' three other witnesses were Monroe W. Long, a banker; Alvin A. Swenson, Jr., a Ford dealer; and Ernest H. Heydt, a lumber dealer. N.T. pp. 95, 102 and 114 respectively). In addition to the affidavits of the respective parties which are part of the pleadings, the record contains plaintiffs' exhibits P-1 to P-4, inclusive, consisting of the Ford Sales Agreement and three letters addressed to plaintiffs by the Ford Motor Company (N.T. p. 185).

As requested by the Court, plaintiffs have submitted proposed findings of fact and conclusions of law. These findings quite naturally restate the allegations of the complaint, and may be suggested by the following excerpts:

"6. * * * that commencing in November of 1958 and up to the Fall of 1961, the defendant has attempted to coerce and intimidate the plaintiff dealer by threatening cancellation of its franchise if sales goals set unilaterally by the defendant were not reached, and consummated the threats by giving notice of cancellation prior to the commencement of this suit, which notice had an effective date subsequent to the institution of this suit.

"7. The defendant has treated the franchise with the plaintiff dealer as canceled after February 3, 1962, and has refused to accept any orders from the plaintiff dealer subsequent to that date.

"8. The refusal of the defendant to honor orders of the plaintiff dealer has seriously curtailed its ability to operate the business, and unless delivery is compelled by the court, there will be irreparable harm and damage to the intangible good will of the plaintiff's business, and to the employees of the plaintiff dealer."

Having heard the witnesses for the plaintiffs and examined the exhibits in the record, this Court is not in position to adopt those findings as having been proved.

Plaintiffs' own pleadings and testimony reveal that the agency agreement with Ford was a complex one—but one which plaintiffs elected to take, in preference to a five-year agreement. The agreement in question, executed originally in 1957, was terminable on 120 days' notice without cause, and on 90 days' notice with cause.

It is true that a termination in bad faith by either party would—under the Act—be no termination at all. On the other hand, the correspondence and testimony reveals termination notices by Ford dating back to 1959—followed by what might be called indefinite reprieves.

On plaintiffs' side, it is apparent that the situation has been a most difficult one, with their investment constantly endangered by the fact that their franchise was hanging in the balance. Meanwhile, they were not always able to secure the kinds of cars for which there was the greatest demand, and were shipped, from time to time, models which were hard to move.

As to the last-mentioned difficulty, plaintiffs' own witness, A. A. Swenson, Jr., on redirect examination testified that he was subjected to high quotas, and by no means secured all the fast-moving models which he ordered (N.T. p. 108).

■ Reference to the testimony which derogates from plaintiffs' claim is made for the limited purpose of passing upon the request for temporary injunction. The respective pulls and tugs of plaintiffs' evidence are suggested not as an expression of immutable views, or in justification of one position or the other, as was said in Barker Painting Co. v. Brotherhood of Painters, 15 F.2d 16, 18 (3rd Cir. 1926),

"* * * but merely to show that many variable and intangible factors inevitably enter into the situation, making the injunctive process of doubtful propriety and legality. It is a principle long recognized that the power to grant the extraordinary remedy of injunction should be exercised by courts with great caution and applied only in very clear cases. Truly v. Wanzer, 5 How. 141, 12 L.Ed. 88; Irwin v. Dixion, 9 How. 11, 13 L.Ed. 25 * * *."

Plaintiffs deny that the law requires a "clear case" (supra), and that a statement like the following, as stated in Charles Simkin & Sons, Inc v. Massiah, 289 F.2d 26, 29 (3rd Cir. 1961) is too strong under the law applicable here:

"* * * As a prerequisite to the issuance of an interlocutory injunction, the moving party must

show a clear right to relief. There must be no disputed issues of fact."

Plaintiffs themselves do not deny, however, that the party moving for preliminary injunction must at least make a showing of probable success upon final hearing. North Carolina Natural Gas Corp. v. United States, 200 F.Supp. 740, 743 (D.Del.1961). They rely largely upon a dictum in Yakus v. United States, 321 U.S. 414, 440, 64 S.Ct. 660, 88 L.Ed. 834 (1943):

"* * * Even in suits in which only private interests are involved the award is a matter of sound judicial discretion, in the exercise of which the court balances the conveniences of the parties and possible injuries to them according as they may be affected by the granting or withholding of the injunction."

The necessity of balancing the competing equities has been recognized by this Court. Pennsylvania Motor Truck Ass'n v. Port of Phila. M. T. Ass'n, 183 F.Supp. 910, 918 (E.D.Pa.1960). But the discretionary power to grant a preliminary injunction is a power to be exercised with great caution. Murray Hill Restaurant, Inc. v. Thirteen Twenty One Locust, 98 F.2d 578, 579 (3rd Cir. 1938).

Since the injunction which is sought has mandatory aspects, the burden of making a strong showing, on the part of plaintiffs, is a heavy one. See W. A. Mack, Inc. v. General Motors Corporation, 260 F.2d 886 (7th Cir. 1958).

To recite all the semantic variations of the phrases which courts have used in describing the chancellor's chore cannot serve any useful purpose. It is enough to say that the issues are doubtful. As was said in Madison Square Garden Corporation v. Braddock, 90 F.2d 924, 927 (3rd Cir. 1937):

"* * * It has been well stated that upon an application for a preliminary injunction to doubt is to deny."

Accordingly, after hearing all of the plaintiffs' evidence, and considering the exhibits and arguments, this Court finds that plaintiffs have failed to meet the burden required of them and, therefore, finds as a fact that plaintiffs have failed to prove bad faith, coercion, discrimination, or threatened irreparable harm warranting the issuance of a preliminary injunction under the law. It is to be understood however, that this Court is in no sense deciding the case on the merits.

It is therefore the ruling of this Court that plaintiffs' petition for preliminary injunction be dismissed and it is SO ORDERED.