■ FLAMINGO TELEFILM SALES, INC., Respondent, v. UNITED ARTISTS COR-PORATION et al., Appellants.— Order, entered on April 30, 1964, unanimously reversed, on the law, with $30 costs and disbursements to defendants-appellants, and motion to dismiss complaint granted, with $10 costs, with leave to plaintiff to serve an amended complaint within 20 days after service of copy of order hereon with notice of entry. The complaint does not comply with the CPLR requirement that the "Statements in a pleading shall be sufficiently particular to give the court and parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved and the material elements of each cause of action." (CPLR 3013; see Foley v. D'Agostino, 21 A D 2d 60; cf. Shapolsky v. Shapolsky, 22 A D 2d 91.) The plaintiff contends that it has "common-law property rights" in a certain motion picture film; that the defendants "have illegally misappropriated" such rights in the matter of the telecast of segments of such film without plaintiff's consent. The plaintiff's alleged rights, according to its complaint, are grounded upon the alleged acquisi-tion by it under a written agreement with a third person of the "sole and exclusive right, license and privilege to distribute, exhibit, license for subdis-tribution, lease, and otherwise exploit" the motion picture "by means of tele-vision broadcasts thereof throughout the United States, Hawaii, and Porto Rico". Of course, the nature and extent of the rights acquired by plaintiff by virtue of the said alleged written agreement would depend upon the title and rights possessed by the licensor in the particular motion picture, but the complaint does not purport to show what they were, if any. The decisions of Fisher v. Star Co. (231 N. Y. 414) and International News Serv. v. Associated Press (248 U. S. 215) cited by Special Term, will not sustain the complaint. The plaintiff does not claim that the story or the sound track used in the motion picture film was authored or created by the plaintiff or by its licensor, or that the film itself was created, arranged or originally produced by the plaintiff or by its licensor, and

the complaint lacks allegations tending to show that the public was in any way deceived or confused by the actions of the defendants. On the complaint, this is not a case where the exploiting and use of the film is "unfair to the public and the plaintiff" or where the defendants have sought "to pass off as [their] own the thoughts and works of another." (See *Fisher* v. *Star Co., supra,* p. 433.) Nor is this a case of unfair competition grounded on the theory of the misappropriation by defendants of material originated and developed by the plaintiff or its licensor and the use thereof by the defendants in competition with the plaintiff. (See *International News Serv.* v. *Associated Press, supra.*) If the particular motion picture film was in the public domain, and the contrary does not appear, the defendants would be entitled to duplicate and use all or portions of the picture film for telecast or other legitimate purposes, and if their acts were not such as to deceive the public or defraud the plaintiff, they would not incur any liability to plaintiff. (See *Cable Vision* v. *KUTV*, 335 F. 2d 348; *Sears, Roebuck & Co.* v. *Stiffel Co.*, 376 U. S. 225; *Compco Corp.* v. *Day-Brite Light.*, 376 U. S. 234; see, also, *Miller* v. *Universal Pictures Co.*, 11 A D 2d 47, affd. 10 N Y 2d 972; *Mastro Plastics Corp.* v. *Emenee Ind.*, 16 A D 2d 420, affd. 12 N Y 2d 826; *A. J. Sandy, Inc.* v. *Junior City*, 17 A D 2d 407; *Capitol Records* v. *Mercury Records Corp.*, 221 F. 2d 657.) Special Term apparently assumed that this was the law but held that the plaintiff would have a cause of action if the defendants had appropriated "the very item licensed" to plaintiff as distinguished from a mere copying thereof, and reasoned that the defendants may be held liable under precedents allowing recoveries for "the unauthorized appropriation of artistic performances to the profit of others". (Special Term citing *Metropolitan Opera Assn.* v. *Wagner-Nichols Recorder Corp.*, 199 Misc. 786, affd. 279 App. Div. 632; *Mutual Broadcasting System* v. *Muzak Corp.*, 177 Misc. 489; *Twentieth Century Sporting Club* v. *Transradio Press Serv.*, 165 Misc. 71; *C. B. S.* v. *Documentaries Unlimited*, 42 Misc 2d 723.) Under the theory of these decisions, however, the cause of action would be one which would be vested in the artist or the creater or in his licensee or assignee; and the plaintiff does not claim to so qualify. The area of the law dealing with the rights and liabilities in connection with the republication of motion pictures via the television medium is in the formative stage. Until the law is settled, it is generally preferable that a court limit its conclusions to the precise problem involved in the particular case. Therefore, in repleading, the plaintiff should restate its alleged cause or causes of action with sufficient particularlity to show fully the exact basis and the material elements thereof. Concur — Botein, P. J., Breitel, Rabin, Eager and Steuer, JJ.