**GROVE PRESS, INC., Plaintiff,**

v.

**COLLECTORS PUBLICATION, INC. and
Marvin Miller, Defendants.**

Civ. A. No. 67–33.

United States District Court
C. D. California.

Feb. 3, 1967.

Averill C. Pasarow, Los Angeles, Cal.,
for plaintiff.

Walter E. Hurst, Los Angeles, Cal.,
for defendants.

IRVING HILL, District Judge.

On January 9, 1967, Plaintiff filed an application for a temporary restraining order and for preliminary injunction. On January 9, 1967, in open court in the presence of counsel for Plaintiff and Defendants, and after argument, the Court issued and filed a Temporary Restraining Order and an Order to Show Cause why a preliminary injunction should not issue. The said Order to Show Cause came on for hearing January 23 and 24, 1967, before the Honorable Irving Hill, Judge presiding, Averill C. Pasarow, Esq. appearing for Plaintiff, and Walter E. Hurst, Esq. appearing for Defendants, and Defendant Miller being present personally in Court throughout the proceedings, and the same was duly heard by the Court, the Court having considered the affidavits, declarations, oral testimony, exhibits, points and authorities and argument offered, filed or made by the respective parties. It appears to the Court as follows:

1. Plaintiff will suffer great and irreparable injury and damage before the matter can be tried unless a preliminary injunction is granted, and this case is a proper case for the issuance of a preliminary injunction.

2. The within preliminary injunction is based upon the Court's Findings of Fact and Conclusions of Law filed this date.

3. Though entitled to a preliminary injunction, Plaintiff is not entitled to such a preliminary injunction in as broad a scope as the Temporary Restraining Order filed January 9, 1967.

Now, therefore, it is ordered that Defendants Marvin Miller, Collectors Publications, Inc., their officers, agents, servants, employees, attorneys, and all persons in active concert and participation with them are enjoined from advertising for sale, printing, publishing, or selling any edition of the book "My Secret Life" which is produced, in part or in whole, from, or by means of, photographic reproduction of Plaintiff's edition of "My Secret Life".

It is further ordered that this injunction shall continue in effect until the entry of final judgment herein, or until such time as the Court, for good cause shown, modifies or dissolves said injunction, whichever is sooner.

It is further ordered that Plaintiff's bond in the amount of $10,000.00 filed in conjunction with this Court's said Temporary Restraining Order shall continue in effect as the bond on this Preliminary Injunction.

It is further ordered that nothing herein shall prohibit Defendants or anyone from advertising for sale, printing, publishing or selling any edition of the book "My Secret Life" which is not produced, in part or in whole, from, or by means of, photographic reproduction of Plaintiff's edition of "My Secret Life".

It is further ordered that this Preliminary Injunction shall be effective from and after the date and time of its oral pronouncement in open Court, i. e. 3:30 P.M. on January 24, 1967.

It is further ordered that the Clerk serve copies of this Preliminary Injunction and the Findings of Fact and Conclusions of Law, by United States mail, which were filed this date, upon counsel for Plaintiff and Defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

These findings and conclusions are made for the purposes of this Preliminary Injunction only and are based only upon the limited evidence before the Court at this time. They shall not bind the Court in any factual or legal determination which the Court may be called on to make at the trial of the action, and are made without prejudice to either of the parties urging the same factual or legal positions at the trial as they have urged in this proceeding.

### FINDINGS OF FACT

1. The Court has jurisdiction over this action under Title 28 U.S.C. § 1338 (a), (b).

2. "My Secret Life" is an autobiography of an anonymous gentleman print-

ed in the late nineteenth century by the author in an edition consisting of six copies. Said work is hereinafter called "the original work". Of the six copies, only three copies are known to be in existence today. One copy is located in the Institute for Sex Research, Inc. at Indiana University; one copy is in the British Museum; and the third copy is owned by a German company, Gala Verlag GmbH (hereinafter "Verlag"). All parties have conceded in open court that the original work is now in the public domain.

3. On March 10, 1966, Plaintiff, Grove Press, Inc. (hereinafter "Grove"), for valuable consideration, acquired from Verlag the exclusive right to reproduce in the United States Verlag's copy of the original work in book or any other form with or without such changes, deletions or additions as Plaintiff should decide to make. In accordance with this agreement, Verlag delivered to Grove microfilm copies of the original work.

4. Plaintiff made approximately forty thousand changes from the Verlag copy in producing its edition. These changes consisted almost entirely of elimination and addition of punctuation, changes of spelling of certain words, elimination and addition of quotation marks, and correction of typographical errors. These changes required no skill beyond that of a high school English student and displayed no originality. These changes are found to be trivial.

5. The original work as thus changed by plaintiff is hereinafter referred to as the "Grove edition".

6. Plaintiff thereupon set the Grove edition into book form in excellent, easily-read type at a cost of about $26,000.00 and expended many thousands of dollars additional in printing, distributing and advertising the Grove edition.

7. The Grove edition was first released for distribution and sale on December 12, 1966. A notice of copyright was placed on the page following the title page thereof.

8. On January 4, 1967, Grove filed with the Office of the Register of Copyrights an Application for Registration of a Claim to Copyright. On this Application, Plaintiff limits its claim of copyright to the changes made by Plaintiff and to a new preface prepared by Plaintiff. The said new preface is not in issue here, as Defendants have not attempted to, and do not intend to, copy this preface in any way.

9. On January 4, 1967, the Copyright Office issued to Grove a Certificate of Copyright Registration No. A 876656.

10. In December 1966 Defendants conceived a plan to bring out, distribute and sell a book under the same name "My Secret Life" in competition with Plaintiff, which book would be a photographic copy of the Grove edition. It was Defendants' plan and intention to do this by the use of an offset lithography process, which involves photographing the pages of the Grove edition and using the said photographs for the reproduction of volumes in book form. Defendants have in fact photographed the pages comprising Volume 1 of the Grove edition and have prepared plates (Exhibit D) so that said photographs can be used in making books. By use of such photographs of the Grove edition Defendants saved the cost of typesetting and can print and sell their books, which are photographic copies of Plaintiff's books, at substantially less than it would cost if Defendants were to set the type themselves. Defendants have stated in open court that they still intend to produce, publish and sell such books made by said photographic processes, in competition with Plaintiff unless enjoined by order of this Court. The edition which Defendants propose to make and sell by said photographic process is hereinafter referred to as "Defendants' first edition".

11. On or about January 12, 1967, after the Court's issuance of its Temporary Restraining Order, Defendants conceived a further plan to issue and publish a book entitled "My Secret Life" in com-

petition with Plaintiff but involving a different edition.

12. Defendants traveled to Bloomington, Indiana, for the purpose of inspecting and, if possible, copying the copy of the original work owned by the Institute for Sex Research, Inc. at the Indiana University. The Institute's director permitted Defendants to have access to the said copy of the original work, but forbade their copying it. In a very short period of time, with the aid of several university students, Defendants were able to recreate the original work without directly copying the Institute's copy. This was done by marking up a copy of the Grove edition, which Defendants apparently purchased, so as to note thereon every change made on each page by Plaintiff and correcting the page so as to show the page as it appears in the original work.

13. Defendants then made a number of trivial changes of their own in the original work consisting of changes in punctuation and spelling and correction of typographical errors. None of the changes made by Defendants have been copied from the Grove edition. The original work as so changed by Defendants is hereinafter referred to as "Defendants' second edition".

14. Defendants have commenced the preparation of their second edition for publication and have set many pages thereof in type. However, Defendants have not yet printed any volume of their first or second edition, nor have they sold any volume of either edition to any member of the public.

15. All acts of Defendants, except the acts described in Finding 12 above, have taken place in California.

16. Defendants may be unable to respond in damages if either their first or second edition is published and is ultimately held to be an infringement of copyright or unfair competition.

## CONCLUSIONS OF LAW

1. Since the original work is in the public domain, Grove acquired no copyright interests from Verlag.

2. An edition of a public domain work that contains new matter is entitled to a derivative copyright on the new matter. 17 U.S.C. § 7. However, such new matter is entitled to no copyright protection when the new matter is "trivial". Chamberlin v. Uris Sales Corp., 150 F.2d 512 (2d Cir. 1945); G. P. Putnam's Sons v. Lancer Books, Inc., 239 F.Supp. 782, 785 (S.D.N.Y.1965); cf. Alfred Bell & Co. v. Catalda Fine Arts, 191 F.2d 99 (2d Cir. 1951).

3. Since the new matter in the Grove edition was trivial, the Grove edition is uncopyrightable as a derivative work or otherwise. In reaching this conclusion, the Court has recognized that a Certificate of Copyright Registration is *prima facie* evidence of the facts stated therein, 17 U.S.C. § 209, but this presumption has been sufficiently dispelled.

4. The words in an uncopyrightable book are in the public domain and may be copied by anyone without infringing any copyright. Such copying, alone, does not constitute unfair competition. Sears, Roebuck & Co. v. Stiffel, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964); Compco Corp. v. Day-Brite Lighting, Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964).

## AS TO DEFENDANTS' FIRST EDITION

5. Unfair appropriation of the property of a competitor is unfair competition and redressable in a situation of this kind despite the holdings in Sears, Roebuck & Co. v. Stiffel, supra, and Compco Corp. v. Day-Brite Lighting, Inc., supra. Greater Recording Co. v. Stambler, 144 U.S.P.Q. 547 (N.Y.Sup.Ct. 1965); Flamingo Telefilm Sales, Inc. v. United Artists Corp., 141 U.S.P.Q. 461 (N.Y.Sup.Ct.1964), rev'd on other grounds, 22 A.D.2d 778, 254 N.Y.S.2d 36 (1964); cf. Cable Vision, Inc. v. KUTV, Inc., 335 F.2d 348, 351 (9th Cir. 1964).

6. Defendants' first edition is more than mere copying of Plaintiff's work, the Grove edition. In view of Plaintiff's expenditure of substantial

sums in setting type and engraving plates, it would constitute unfair competition for Defendants to appropriate the value and benefit of such expenditure to themselves by photographing and reproducing Plaintiff's book through the offset-lithography process, thereby cutting their own costs and obtaining an unfair competitive advantage. See International News Service v. Associated Press, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211 (1918). Hebrew Publishing Co. v. Sharfstein, 288 N.Y. 374, 43 N.E.2d 449 (1942) is distinguishable on its facts in that Plaintiff there had itself photocopied the work and typesetting of a third party. Moreover, *Sharfstein* involves and applies New York law which is not applicable to the instant case.

■ 7. If the Grove edition is ultimately held copyrightable as a derivative work, Defendants' first edition copied all of the copyrightable changes and would be an infringement. Shulsinger v. Grossman, 119 F.Supp. 691 (S.D.N.Y. 1954).

■ 8. Plaintiff has demonstrated the probable success at trial of its action for unfair competition insofar as it applies to Defendants' first edition. Plaintiff is entitled to a preliminary injunction against the further preparation, publication and sale thereof.

### AS TO DEFENDANTS' SECOND EDITION

9. Since the Grove edition is not copyrightable, Defendants are free to copy the same so long as the method of copying does not constitute unfair competition.

■ 10. The publication of Defendants' second edition would not constitute unfair competition with the Plaintiff.

11. Even if the Grove edition were copyrightable as a derivative work, Defendants' second edition copies none of the copyrightable changes and is therefore no infringement. G. P. Putnam's Sons v. Lancer Books, Inc., supra.

12. The following cases, which hold that it is infringement of copyright to copy a copyrightable compilation of public domain material, do not stand for the proposition urged by Plaintiff that Defendants were not free to use Plaintiff's work in recreating the original work. Axelbank v. Rony, 277 F.2d 314 (9th Cir. 1960); Leon v. Pacific Telephone & Telegraph Co., 91 F.2d 484 (9th Cir. 1937); Toksvig v. Bruce Publishing Co., 181 F.2d 664 (7th Cir. 1950); Hartfield v. Peterson, 91 F.2d 998 (2d Cir. 1937).

■ 13. Plaintiff has shown no probability or strong possibility that it will prevail at the trial insofar as Defendants' second edition is concerned. Thus, Plaintiff is not entitled to a preliminary injunction against the preparation, publication or sale of Defendants' second edition. Paramount Pictures Corp. v. Holden, 166 F.Supp. 684 (S.D. Cal.1958); Sam Goldfarb Plymouth, Inc. v. Chrysler Corp., 214 F.Supp. 600 (E.D. Mich.1962).

If any of the above-numbered Findings of Fact shall be deemed to constitute a Conclusion of Law, it shall be considered as a Conclusion of Law and, conversely, if any of the above-numbered Conclusions of Law shall be deemed to constitute a Finding of Fact, it shall be considered as a Finding of Fact.

In the event of an appeal by either side of the Court's decision concerning the issuance of a preliminary injunction, the appealing party is ordered to procure and file a transcript of the Court's oral comments made January 24, 1967, so that the appellate court may have before it the more detailed explanation of this Court's thinking which is contained in said oral comments.