**The H. W. WILSON COMPANY,**
**Plaintiff,**

**v.**

**NATIONAL LIBRARY SERVICE CO.**
**et al., Defendants.**

**No. 75 Civ. 3766.**

United States District Court,
S. D. New York.

Oct. 22, 1975.

imately seventy-year span. Each of the 29 volumes includes all "A" through "Z" listings for that particular interval. Plaintiff had abstracted information which appears in the indices from well-known periodicals.

Defendants, National Library Service Co., Franklin D. Crawford and Anthony De Stephen, are in the process of producing a 25 volume cumulative index based solely on the information found in the 29 uncopyrighted volumes of Readers' Guide. In defendants' pending publication all the "A"'s for seventy years will be in a first volume, all the "B"'s in a second volume, etc. Defendants have almost completed volume "A"; projected delivery is January, 1976. The entire set is scheduled to be completed by December, 1977.

Plaintiff moves for an order preliminarily enjoining defendants, pending the determination of this action, from advertising, offering for sale, selling, distributing or in any manner promoting the sale or distribution of defendants' cumulative index.

Sullivan & Cromwell, New York City, for plaintiff.

Richard Steel, New York City, for defendant Nat'l Library.

Richard C. Woodbridge, Princeton, New Jersey, for defendants Franklin D. Crawford and Anthony DeStephen.

## MEMORANDUM AND ORDER

OWEN, District Judge.

Plaintiff, the H. W. Wilson Company, has produced, from 1900 until the present, a publication entitled *The Readers' Guide to Periodical Literature* (hereinafter referred to as Readers' Guide). From 1900 through February, 1970, plaintiff did not place a copyright notice on any of its Readers' Guide publications. The Readers' Guide for that period includes 29 index books produced at irregular intervals during the approx-

■ Because a preliminary injunction is an extraordinary remedy, it will not be granted unless the plaintiff can make a clear showing of probable success on a trial of the merits and possible irreparable injury. *Beech-Nut, Inc. v. Warner-Lambert Co.*, 480 F.2d 801 (2d Cir. 1973); *Clairol Inc. v. Gillette Co.*, 389 F.2d 264 (2d Cir. 1968). Plaintiff has failed to satisfy either requirement.

■ Plaintiff bases its demand for a preliminary injunction on New York State's law of unfair competition. There can be no question of statutory federal copyright protection since plaintiff failed to copyright the Readers' Guide from 1900 through February 1970. Plaintiff stresses that when it published the uncopyrighted volumes it did not intend to dedicate the material to the public and points to the restrictive legend appearing on many of the

volumes.[1] However, intent to dedicate a work is irrelevant to whether a work enters the public domain. Publishing a book without copyright notice puts the work in the public domain. *National Comics Publications, Inc. v. Fawcett, Inc.*, 191 F.2d 594 (2d Cir. 1951). Nor can plaintiff claim that its Readers' Guide only had a limited publication, thus preserving its common law copyright. Although resale by a library was prohibited in implementing plaintiff's pricing policy,[2] after sale, Readers' Guide's use and availability was otherwise unrestricted as to either persons or purpose. See 1 Nimmer on Copyright § 49 at 194–95 (1975); *White v. Kimmell*, 193 F.2d 744 (9th Cir. 1952).

The species of unfair competition alleged is misappropriation of plaintiff's property rights in the uncopyrighted Readers' Guide. *International News Service v. Associated Press*, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211 (1918). As in *International News*, defendants are appropriating plaintiff's work, thus saving the cost of indexing the periodicals themselves.

> Stripped of all disguises, the process amounts to an unauthorized interference with the normal operation of complainant's legitimate business precisely at the point where the profit is to be reaped, in order to divert a material portion of the profit from those who have earned it to those who have not; with special advantage to defendant in the competition because of the fact that it is not burdened with any part of the expense of gathering the news. The transaction speaks for itself and a court of equity ought not to hesitate long in characterizing it as unfair competition in business. 248 U.S. at 240, 39 S.Ct. at 72.

However, the law of unfair competition underwent a significant change with the Supreme Court companion cases *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 and *Compco Corp. v. Day-Brite Lighting, Inc.*, 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964). Those decisions held that

> when an article is unprotected by a patent or a copyright, state law may not forbid others to copy that article. To forbid copying would interfere with the federal policy . . . of allowing free access to copy whatever the federal patent and copyright laws leave in the public domain. 376 U.S. at 237, 84 S.Ct. at 782.

Initially, it appeared that *Sears-Compco* would render state unfair competition laws pre-empted whenever they intersected with federal patent or copyright law. The full impact of the decisions, however, has been moderated in subsequent cases. In *Goldstein v. California*, 412 U.S. 546, 93 S.Ct. 2303, 37 L.Ed.2d 163 (1973), dealing with California's record piracy statutes, the Court held that the states retain concurrent power to afford protection to recordings, an area left "unattended" by Congress. However, the reasoning in *Goldstein* cannot be extended to cover a work which is one of those enumerated in the Copyright Act, such as plaintiff's index.

> It would seem that if a work is of a type described in the Section 5 enumeration, it constitutes one of the "categories of writings" referred to in *Goldstein* as within the federal sphere, and hence must claim either federal protection or no protection at all. The failure to meet the required standards for federal protection will not negate federal preemption. Otherwise non-compliance with the conditions to limited federal protection could lead to a more unlimited form of state protection. This must surely be

---

1. The legend reads: "This volume has been supplied on a contract which provides that it is not to be sold or given away without the permission of the publishers."

2. Plaintiff's policy was to charge large libraries more for its volumes than small libraries.

contrary to congressional intent. 1 Nimmer on Copyright § 1.2 at 6.1 (1975).

■ A further exception to *Sears-Compco* is *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 94 S.Ct. 1879, 40 L.Ed.2d 315 (1974), in which the Court held that state trade secret protection was not preempted, even though the secret would have been patentable. The rationale is that since trade secrets are by definition not in the public domain, protecting them does not interfere with the federal scheme. Upon publication, the uncopyrighted Readers' Guides entered the public domain.

Plaintiff also brings to my attention *Grove Press, Inc. v. Collectors Publications, Inc.*, 264 F.Supp. 603 (C.D.Cal. 1967). A preliminary injunction was granted in that case, enjoining Collectors from photographing and reproducing Grove's uncopyrightable book through offset-lithography, as constituting unfair competition. However, the court refused to enjoin Collectors from using the Grove work in creating their own. "Since the Grove edition is not copyrightable, Defendants are free to copy the same so long as the *method of copying* does not constitute unfair competition." 264 F.Supp. at 607 (emphasis added). This distinction between copying which is allowable and misappropriation was later used in *Goldstein.*[3] Because of the state of the law, it seems reasonably clear that defendants' use of plaintiff's Readers' Guide is allowable copying under the doctrine of *Sears-Compco*, and that consequently plaintiff will not prevail.

Although plaintiff need not prove that it will necessarily prevail, the weaker the case on the merits, the stronger the probability of injury must be in order for a preliminary injunction to be granted. *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738 (2d Cir. 1953).[4] From the facts before me, it appears that defendant may suffer irreparable injury if an injunction is issued, but harm to plaintiff if defendant is not enjoined will be minimal.

■ If defendant has a successful advertising campaign and gets a large number of orders, sale of plaintiff's already printed back issues may be decreased. There would be no effect, however, on current subscriptions, plaintiff's primary business. If plaintiff were later to prevail on the merits, the orders placed with defendant would be regained.[5] The possibility of injury to plaintiff's name in the library community does not appear to be so great as to warrant the relief requested, all other factors considered.

The defendants, on the other hand, must be able to advertise and take orders for their index prior to the publication date in order to have the capital to finance their venture. There is the very real danger that defendants would be unable to sustain themselves pending trial if an injunction issued.

For the foregoing reasons, plaintiff's motion for a preliminary injunction is denied.

3. "No restraint has been placed on the use of an idea or concept; rather, petitioners and other individuals remain free to record the same composition in precisely the same manner and with the same personnel as appeared on the original recording." *Goldstein v. California*, 412 U.S. at 571, 93 S.Ct. at 2317.

4. In an action to enjoin violation of the Copyright Act, when a prima facie case for infringement has been made out, a preliminary injunction may issue without a detailed showing of irreparable harm. *Leon B. Rosenblatt Textiles Ltd. v. Lowenstein & Sons*, 321 F.Supp. 186 (S.D.N.Y.1970). This is not an infringement case, however.

5. It is unlikely that defendant could fill the orders before the issue is resolved, since the scheduled publication date is December, 1977.