JOHN T. DOWNEY, Respondent-Appellant, *v.* GENERAL FOODS CORPORATION, Appellant-Respondent.

Second Department, July 23, 1971.

252

*James P. Malone* for respondent-appellant.

*Coudert Brothers* (*Carleton G. Eldridge, Jr.,* and *John M. Keene, III,* of counsel), for appellant-respondent.

SHAPIRO, J.  The plaintiff claims that the defendant appropriated his idea — the name "Wiggly" or "Mr. Wiggle" — and related advertising ideas and concepts for a new gelatin product to be directed at a children's market.  The defendant contends that it lived up to its contract with the plaintiff and that, in any event, its distribution of such a product under the trade name "Mr. Wiggle" was the independent creation of its advertising agency, Young & Rubicam (hereinafter Y & R).

On February 15, 1965 the plaintiff wrote the defendant that he had an idea which would increase its sale of Jello to children by a change in its name and formula.  In response, the defendant sent the plaintiff a booklet entitled "About Your Idea" and a paper entitled "Idea Submittal Form" (hereinafter ISF).  The booklet stated: "Ideas are evaluated by the appropriate person in the organization who will make every effort to give yours a thorough, thoughtful, and conscientious review."  It also stated

that the submission of an idea does not establish a confidential relationship and that "the compensation for any suggestion is something which must be left to our discretion."

The ISF contained a printed introductory statement, followed by a place for signature, after which room was left for the idea to be set forth. The introductory statement also provided that no confidential relationship had been established and that the use to be made of the idea and the compensation therefor were matters resting solely in the defendant's discretion. The plaintiff wrote the following in the area above his signature: "In regard to above, I wish to say that it is my understanding that the name 'WIGGLE-E' does not now belong to G. F. but to myself as protected by registered mail, just as if I had patented or copy-righted the name."

The text of the plaintiff's submission contained the idea that a product similar to Jello be packaged under some variant of the name "WIGGLE" so that it would have an appeal to children. Various marketing concepts were included in the text, all directed toward the creation of a larger child-oriented market for the defendant's gelatin products.

The ISF was dated February 19, 1965. The plaintiff claims to have written another letter to the defendant on March 7, 1965, in which he advised it that the best name for the product would be "Mr. Wiggiley" or "Mr. Wiggley". The plaintiff reconstructed this letter, as he could not find its carbon copy; nor did the defendant have a copy of such a letter in its files. On March 8, 1965 the defendant sent a letter to the plaintiff categorically rejecting his submission.

Thereafter, on March 18, 1965, the plaintiff submitted his idea to Knox Gelatin, Inc., which rejected it on March 23, 1965. That submission included the name "Mr. Wiggle".

The defendant, in its answer, admitted that it "has since on or about July 27, 1965 offered for sale to the public a child-oriented, artificially sweetened, dietary gelatin dessert under the name of 'Mr. Wiggle' and that it has used standard advertising media, including print and television, to advertise said product."

Depositions of various employees of the defendant and of Y & R indicated that only one of the defendant's employees read the plaintiff's submission; that it was not made available to anyone concerned with the development of the product which came to be known as "Mr. Wiggle"; that the product name and its marketing concepts were developed by Y & R on an emergency basis to meet the challenge of the Pillsbury Company, which was considering entering the gelatin field with a product

oriented to a children's market, in order to protect the defendant's pre-eminence in the gelatin field: and that, despite an intensive advertising campaign, "Mr. Wiggle" failed to meet the defendant's expectations and was ultimately withdrawn from the market at a net loss of $3,362,000.

The complaint asserts 14 causes of action, 7 of which, in effect, charge a misappropriation of the plaintiff's idea and concept. One cause of action charges fraud and misappropriation of his idea and concept.

It is clear, for the reasons hereinafter stated, that as to these causes of action there are triable fact issues which cannot be disposed of either on the plaintiff's motion for partial summary judgment or on the defendant's cross motion for summary judgment dismissing the complaint.

Within two months after the defendant's formal rejection of the plaintiff's idea, the defendant placed a product which might well have been based upon that idea and concept into distribution on a Nationwide scale, investing literally millions of dollars in its promotion. The facts surrounding the development of the name "Mr. Wiggle" and the concept of a gelatin product directed at a children's market were all within the knowledge of the defendant and its advertising agency, hence it would have been improper to grant the defendant's motion for summary judgment as to those causes of action which charge misappropriation of the idea and concept (cf. *Terranova* v. *Emil*, 20 N Y 2d 493, 497; CPLR 3212, subd. [f]).

The plaintiff's contention that he is entitled to judgment simply because he submitted his idea to the defendant prior to the alleged independent creation of the idea by Y & R is without merit. If on trial it appears that the product "Mr. Wiggle" was an independent creation by the defendant without knowledge of the plaintiff's idea, the defendant will be entitled to dismissal of the plaintiff's causes of action for misappropriation of his idea and concept (cf. *Healey* v. *Macy & Co.*, 251 App. Div. 440, affd. 277 N. Y. 681; Nimmer, Copyright, § 141.2, p. 613). While the development of the name and the concept may have been the result of an independent creation, as the defendant asserts, that is not an issue which may summarily be decided (cf. CPLR 3212, subd. [f]).

Similarly, the plaintiff's cause of action for punitive damages (as to which he does not seek summary judgment) should await trial to determine whether the defendant willfully and recklessly acted in disregard of his rights. He is certainly unable to pinpoint at this time which one, if any, of the defendant's employees was responsible for the appropriation of his idea.

The many legal issues raised by the rema:.:ing causes of action and the affirmative defenses set forth in the answer require discussion. Three causes of action assert the breach of an express contract. The defendant takes the position that there can be no valid cause of action based unon the contract. It argues that either it lived up to the contract by deciding, in its sole discretion, not to pay compensation or that the clause as to compensation is so indefinite as to preclude the conclusion that the parties entered into a contract. The clause in question states that " the use, if any, to be made of this suggestion by  *  *  * [defendant] and the compensation to be paid therefor, if any, if  *  *  *  [defendant] uses it, are matters resting solely in  *  *  *  [defendant's] discretion."

This clause is susceptible to the construction that, while the defendant could, in its sole discretion, determine whether to use the idea, having used it, it is bound to pay reasonable compensation therefor since contracts should not be construed in such a manner as to place one party wholly at the mercy of the other (cf. *Fair Pavilions* v. *First Nat. City Bank,* 19 N Y 2d 512, 518; *Luftig* v. *Travelers Ins. Co.,* 253 App. Div. 538, affd. 279 N. Y. 725; *River View Assoc.* v. *Sheraton Corp. of Amer.,* 33 A D 2d 187; *Rush* v. *Rush,* 19 A D 2d 846).

In *Brown* v. *McGraw-Hill Book Co.* (25 A D 2d 317, 320) the First Department noted: " While it is true that people have made improvident agreements and that even an obvious disadvantage to one of the parties does not affect the validity of the contract, yet, in determining what the construction of the agreement should be, this is a factor. It is not to be assumed that people act unreasonably to their own disadvantage, and an interpretation which assumes that they so acted is not favored (*Campbell* v. *State of New York,* 240 App. Div. 304). ' Contractual obligations are fixed solely by the parties, and the language of a business contract must be construed in the light of what a business man would reasonably expect to give or receive, to perform or suffer, under its terms ' (*Shirai* v. *Blum,* 239 N. Y. 172, 179). ' In the transactions of business life, sanity of end and aim is at least a presumption, albeit subject to be rebutted ' (*Outlet Embroidery Co.* v. *Derwent Mills,* 254 N. Y. 179, 183)."

Similarly, in *Price* v. *Spielman Motor Sales Co.* (261 App. Div. 626, 629) we noted, quoting from 25 Cornell Law Quarterly 615, " Though a court balks at making a contract for the parties, it will, where justice and expediency demand, infuse the contract with a spirit of good faith and fair dealing in order to justify the implication of a covenant which will prevent one party from impairing the right of the other party to receive the

fruits of the contract." (See, also, *Geller* v. *Tow,* 261 App. Div. 773.)

Whether, under all of the facts and circumstances, this is a proper case in which to imply a covenant to prevent the defendant from impairing the plaintiff's right to receive the fruits of his contract should be decided at trial and not summarily on papers. This is particularly so in view of the rule that any ambiguity in the contract should be resolved against the defendant, the party who drew it (*Luftig* v. *Travelers Ins. Co., supra;* *General Venture Capital Corp.* v. *Wilder Transp.,* 26 A D 2d 173; *Hodom* v. *Stearns,* 32 A D 2d 234).

Special Term therefore properly decided that summary judgment should not be granted against the plaintiff on his cause of action for breach of an express contract.

The plaintiff's cause of action in negligence asserts that the defendant improperly processed his submission. He argues that an appropriate review of his submission required its dissemination among those persons employed by the defendant who could have honestly assessed its worth. While I entertain some doubt as to the validity of such a contention framed in negligence, the cause of action appears to be sustainable as one for breach of contract. The booklet mailed to the plaintiff along with the ISF stated that the submission would receive a thorough, thoughtful and conscientious review by the appropriate person. There is therefore an issue related to those causes of action for breach of an express contract, above discussed, as to whether the plaintiff's submission had been accorded thorough, thoughtful and conscientious review in accordance with the defendant's express representations, as it appears that the defendant adopted the same or a similar idea shortly after its rejection of the plaintiff's submission.

Summary judgment was also properly denied to the defendant on the plaintiff's cause of action in quasi contract. The requisites of a contract implied in fact are described in *Miller* v. *Schloss* (218 N. Y. 400, 406-407) as follows: "A contract cannot be implied *in fact* where the facts are inconsistent with its existence; or against the declaration of the party to be charged; or where there is an express contract covering the subject-matter involved; or against the intention or understanding of the parties; or where an express promise would be contrary to law. The assent of the person to be charged is necessary and unless he has conducted himself in such a manner that his assent may fairly be inferred he has not contracted. * * * A *quasi* or constructive contract rests upon the equit-

able principle that a person shall not be allowed to enrich himself unjustly at the expense of another. In truth it is not a contract or promise at all. It is an obligation which the law creates, in the absence of any agreement, when and because the acts of the parties or others have placed in the possession of one person money, or its equivalent, under such circumstances that in equity and good conscience he ought not to retain it, and which *ex aequo et bono* belongs to another. Duty, and not a promise or agreement or intention of the person sought to be charged, defines it. It is fictitiously deemed contractual, in order to fit the cause of action to the contractual remedy."

In *Robbins* v. *Cooper Assoc.* (19 A D 2d 242, revd. 14 N Y 2d 913) the plaintiff recovered judgment based upon the theory that the defendants, in producing the television program "Dotto", had utilized his original idea, submitted to them at their invitation. The idea had been sufficiently tangible to give rise to an action for appropriation on a theory of implied contract. The court noted that in order to establish a contract implied in fact the plaintiff would have to show that the parties had intended that he would be paid for the idea to the extent of its reasonable worth if it were used by the defendants and that such was their clear understanding, although not in express language. A contract implied in law would result if there were neither an express nor an implied contract, but the circumstances rendered it inequitable for the defendants to profit from the use of the idea or material. Although the First Department was of the opinion that the proof supported either theory of implied contract, it reversed the judgment solely on the ground that proof of damages had been speculative. The Court of Appeals reversed and reinstated the judgment, thereby sustaining the validity of the causes of action.

In *Bradkin* v. *Leverton* (26 N Y 2d 192, 196) the Court of Appeals again approved the use of the quasi contract theory as an obligation "imposed by law where there has been no agreement or expression of assent, by word or act, on the part of either party involved."

The complaint here is sufficiently broad to permit a recovery on the theory of a contract implied in fact or in law. The plaintiff's signature on the ISF does not necessarily bar these causes of action. Although the defendant's form stated that compensation, if any, was to be paid in its sole discretion, the plaintiff included in his handwritten matter in the form, above his signature, the following: "I would ask that if at any time you should decide to use this name and if it proved successful, that

my wife & I be compensated *only* to the actual worth or value of the name & idea '' (emphasis in original). On trial it may therefore be determined that neither party assented to the other's expression of intent as to compensation, thereby leaving open the possibility of recovery on a theory of implied contract. In any event, it has been held that proof of the existence of an express contract under which an idea is submitted to another does not bar the assertion of an implied contract theory for the resultant appropriation of the idea (*Cole* v. *Phillips H. Lord, Inc.*, 262 App. Div. 116, 121).

As to the causes of action for breach of contract and in quasi contract, the defendant contends that since it unquestionably lost money in its promotion of '' Mr. Wiggle '', the plaintiff, in accordance with his express statement in the submission, is not entitled to compensation. This contention has surface plausibility but does not withstand careful analysis. The defendant had learned that the Pillsbury Company was about to enter the children's gelatin market with a product called '' Jiggly ''. The reason for the defendant's rush distribution of its product under the name '' Mr. Wiggle '' was to meet the challenge of the Pillsbury Company in the children's gelatin market and to preserve the position of its other gelatin products, Jello and D-Zerta. It seems to have been successful in this regard. It is admitted that Pillsbury never entered the national market to joust with it. It therefore cannot now be said as a matter of law that the idea of distributing a gelatin product under the name '' Mr. Wiggle '' aimed at the children's market was unsuccessful, so as to preclude a recovery for the plaintiff.

The defendant also asserts with regard to the causes of action in contract and quasi contract that an idea cannot be protected unless it is disclosed pursuant to a contract or a confidential relationship. This rule, however, has applicability to cases of gratuitous, unsolicited disclosures of ideas, unprotected by contract (see, e.g., *Grombach Prods.* v. *Waring*, 293 N. Y. 609, 616; *Bristol* v. *Equitable Life Assur. Soc. of N. Y.*, 132 N. Y. 264). Here, the idea was solicited by the defendant in response to the plaintiff's original letter and was submitted on the defendant's form under circumstances which indicated that both parties regarded possible compensation as a factor. This is therefore not a case of a gratuitous, unsolicited submission of an idea.

A jury could find that the plaintiff's idea had been reduced to sufficient concreteness so as to permit recovery. He submitted a concrete idea to the defendant, involving a product name and concept. That the plaintiff did not develop the market-

ing concepts to the refined degree expected of an advertising agency should not act as a bar to recovery.

The defendant's first affirmative defense is that the plaintiff's "product concept and name" constitute unprotected matter within the scope of the patent and copyright laws. This defense is directed at the plaintiff's cause of action for breach of common-law copyright, his only cause of action not yet discussed. The defendant's assertion that the plaintiff, as a matter of law, cannot have a valid common-law copyright on a title is misleading. While there is some authority for this proposition (see, e.g., *Duff* v. *Kansas City Star Co.*, 299 F. 2d 320; *Becker* v. *Loew's Inc.*, 133 F. 2d 889), the plaintiff claims a copyright on more than just the name "Mr. Wiggle". His claimed copyright also includes marketing concepts and advertising suggestions.

The defendant argues that the *Sears-Compco* doctrine bars the common-law copyright cause of action. This doctrine is set forth in *Sears, Roebuck & Co.* v. *Stiffel Co.* (376 U. S. 225) and *Compco Corp.* v. *Day-Brite Lighting* (376 U. S. 234). In the *Sears* case, the court held that a State's unfair competition law may not be invoked to impose liability for the copying of an article which is not protected by Federal patent or copyright. It held (pp 231–232): "To allow a State by use of its law of unfair competition to prevent the copying of an article which represents too slight an advance to be patented would be to permit the State to block off from the public something which federal law has said belongs to the public".

The *Compco* case, which reached a similar result, also involved an unpatented industrial design. The court noted that its holdings did not prevent the imposition of liability by States in cases of "palming off" (p. 238).

The precise extent of the *Sears-Compco* doctrine is unclear. In *Lear, Inc.* v. *Adkins* (395 U. S. 653, 674) the court left open the question of "to what extent, the States may protect the owners of *unpatented* inventions who are willing to disclose their ideas to manufacturers only upon payment of royalties" (emphasis in original).

In *Water Services* v. *Tesco Chemicals* (410 F. 2d 163, 171, 172) the court noted that the *Sears* and *Compco* cases were inapplicable to the area of trade secrets and that substantial policy considerations militated against construing them to apply to such cases.

Although the decisions in *Sears* and *Compco* referred to copyright, the holdings were dicta in that regard. Both cases involved the copying of unpatented industrial designs. It was reasonable

to hold that unpatentable designs may not be protected since the Federal statute grants protection only to patented designs. The Federal copyright statutes, on the other hand, specifically preserve the right to recover damages for violation of common-law copyrights (U. S. Code, tit. 17, § 2). It is therefore at least arguable that failure to procure a copyright pursuant to Federal statute does not bar a State from protecting a common-law copyright.

The defendant's second affirmative defense is sustainable against the plaintiff's motion for summary judgment. That defense alleges that the plaintiff's submission of a name and product concept was independently created by the defendant *prior* to the submission. The defendant's depositions revealed that its advertising agency, Y & R, created the name *after* the plaintiff's submission. However, since the basis of the defense is that the name and concept was the defendant's own independent creation it is not vulnerable to attack by a summary judgment motion. The verity of the defense can only be determined at a trial.

In addition, the defendant submitted proof to the effect that it had used the word " Wiggle ", or variations thereof, in prior advertising campaigns for its other gelatin products. Such proof could lead a jury to the conclusion that the plaintiff's idea was not novel and that his product concept had in fact been previously known by the defendant.

The defendant's third affirmative defense, that there was a lack of consideration sufficient to support recovery on a theory of breach of either an express or quasi contract, is based on our decision in *Soule* v. *Bon Ami Co.* (201 App. Div. 794, affd. 235 N. Y. 609), in which the plaintiff suggested that, if the defendant raised the wholesale price of its product, it could increase its profits. We there held that the idea thus submitted was neither new nor original and hence could not be deemed valuable (see, also, *Bram* v. *Dannon Milk Prods.*, 33 A D 2d 1010). Here, however, we are dealing with what a jury may determine to be an original product name together with a concept for its marketing. It cannot be held as a matter of law that the plaintiff's idea was unoriginal and valueless.

The defendant's final affirmative defense is that the plaintiff's product concept and name had been publicly dedicated by him prior to the submission to the defendant. No proof was submitted in support of this defense and it has not been pressed on this appeal.

The order appealed from, which denied the respective motions of both parties on the ground that the pleadings and the proofs

presented factual issues requiring a plenary trial, should therefore be affirmed, without costs.

Rabin, P. J., Hopkins, Munder and Martuscello, JJ., concur.

Order of the Supreme Court, Nassau County, entered November 25, 1970, affirmed, without costs.