■ LESTER J. MILICH, Appellant, v SCHENLEY INDUSTRIES, INC., Respondent.—Judgment, Supreme Court, New York County, entered on October 20, 1975, dismissing the complaint at the close of plaintiff's case, affirmed, without costs, and without disbursements. The record is crystal clear that the plaintiff has brought this action because he is not satisfied with the amount awarded to him by the awards committee. He believes he is entitled to more. That is the particular reason for this litigation. In connection with this claim it is well to quote a clause which appeared in the contest pamphlet. This clause reads as follows: "These conditions necessarily contain some elements of subjectivity, although we have made them as fair as we could. The value of a marketing idea, for example, can never be precisely known down to the last penny because of the many factors that influence sales. The dollars-and-cents value of a morale-boosting idea can be only an intelligent guess, at best. Because of situations like these, *the Brain Game Awards Committee must have the last word and its determination as to savings and values shall be final, binding and conclusive; and each entrant agrees that he or she accepts the rules as set forth in this booklet and accepts the determinations of savings and values by The Brain Game Awards Committee.*" At pages 61–62 of the record the trial court said: "THE COURT: Well, I have listened carefully to the argument of counsel on this case and I have read this brochure which is the controlling document concerning the rights of the employer and the employee relative to this suggestion box entry prize, as utilized in the Schenley operation. I see no breach of this contract in this case. What the plaintiff is simply complaining about is the amount of the award that he got, and the contract that is the rules of the game as specified in the brochure on which the plaintiff bases his case is very clear and contains this expressed provision: [Quoting the clause set forth above.] Plaintiff cannot escape the effect of those provisions." Later, at page 65, the court said: "THE COURT: It is clear that at all times that the plaintiff was seeking compensation on the basis of an award under the contract." We agree with the determination of the court below. No matter how we examine the issue before us, it comes down to the fact that the plaintiff is not satisfied with the amount given to him and wants more. We cannot interfere in view of the record before us. Concur—Capozzoli, Lane and Lynch, JJ.; Kupferman, J. P., and Birns, J., dissent in a memorandum by Kupferman, J. P., as follows: I would reverse and order a new trial. The employer offered a suggestion contest promising "the brain game can enrich you" and setting forth that the minimum award for an idea submitted was $25, but that the "MAXIMUM AWARD is infinite * * * and creativity can win you prizes up into the Thousands!" The instructions went on to say "The value of a marketing idea, for example, can never be precisely known down to the last penny because of the many factors that influence sales." It also stated: "Rejected ideas that are subsequently adopted are treated exactly like any other Brain Game winners. You get the same award as the other persons * * * the same review of the amount awarded a year later * * * the same credit on your personnel record * * * the same publicity." The plaintiff, a member of the defendant's legal department (but no longer), submitted a sales promotion idea. In view of the

fact that his employer and others in the liquor industry were soon to market "light whiskey", he suggested that they use a trademark registration which they already had, for the word "FEATHERS". The tie-in was appropriate enough. He was notified that his suggestion was not being considered for a prize, but would be retained for two years in accordance with the contest rules, and, if adopted, plaintiff should notify the committee. The next year, his suggestion was adopted, and when he notified the committee, there was no response. A year later, plaintiff made a written complaint to the defendant's president with whom he was on a first name basis, and some four months later he was awarded $150 less withholding, for a net amount of $111.82. The explanation for the small amount was that, although used, the idea did not attract any new customers. While it is true, as the trial court found, that the decision as to the amount was to be made by the employer, it was required to act in good faith. (See *La Shelle Co. v Armstrong Co.,* 263 NY 79, 85; *Underhill v Schenck,* 238 NY 7, 21.) Here, the plaintiff's suggestion was treated in cavalier fashion, although concededly adopted, and the employer should have been required to show the basis for its determination that $150 was the reasonable value of the idea and, among other things, to show its compliance with its own rules, such as "You get the same award as the other persons." *(Robbins v Cooper Assoc.,* 14 NY2d 913.) In *Pillois v Billingsley* (179 F2d 205), there was an agreement which specifically provided that the employer in his sole discretion would determine the worth of the services supplied. Nonetheless, the court determined that the valuation had to be made in good faith and allowed a recovery for the reasonable value of the services. (See David M. Solinger, Idea-Piracy Claims—or Advertiser, Beware!, in 1953 Copyright Problems Analyzed pp 121, 129 [CCH, 1953], reprinted in Copyright Problems Analyzed [Rothman, 1966].) The *Pillois* case has only recently been followed to the same effect in the Second Circuit (see *Leighton v New York, Susquehanna and Western R. R. Co.,* 455 F2d 389, 392 [1972]). It was error to dismiss at the close of the plaintiff's case. (See *Downey v General Foods Corp.,* 37 AD2d 250, 256, revd on other grounds 31 NY2d 56.)