**DECORATIVE AIDES CORP., INC., Plaintiff,**

v.

**STAPLE SEWING AIDES CORP., Defendant.**

**No. 79 Civ. 53 (RLC).**

United States District Court, S. D. New York.

June 30, 1980.

Howard I. Schuldenfrei, New York City, for plaintiff.

Anthony J. Casella, New York City, for defendant.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff, a New York corporation, manufactures a drapery header for home sewers and markets it under the trade name "Custom Pleats." The drapery header–a length of stiff material which the sewer stitches to the top of a drapery fabric, then folds and tacks at designated spots–stiffens the top of the drapery so that hooks can be inserted for attachment to a curtain rod.

"Custom Pleats" is not protected by federal patent or copyright.[1] However, plaintiff owns a registered copyright for an instruction sheet which serves both to advertise and to illustrate how to use the device at the point of purchase. The copyrighted work is a 4¾″ by 13″ sheet of orange glossy paper with a peel–off adhesive backing, to be applied to the display stand carrying "Custom Pleats" in the retail store. It contains an illustrative diagram, brief instructions, a yardage chart indicating how much fabric is required to produce finished draperies of varying widths, the trade name "Custom Pleats," and plaintiff's name. The instruction sheet was created by plaintiff's predecessor in interest in April 1977[2] and

1. Plaintiff had applied for a federal copyright for the device but was refused because the Copyright Office deemed the device uncopyrightable.

2. In June, 1978, plaintiff acquired all rights to the copyright in the work by mesne assignment from the registrant, Terry Bressler, doing business as Decorative Aides Co., plaintiff's predecessor in interest.

was registered with the copyright office under class A [3] about that time.

Early in 1978, defendant, a New Jersey corporation, also began marketing a drapery called "Jiffy Pleater" which is quite similar to the plaintiff's product. Defendant printed an illustrative diagram and instructions, as well as its corporate name and address directly on the product itself.

Plaintiff alleges that defendant's "illustrative instructive format," printed on the Jiffy Pleater, is virtually identical to the plaintiff's copyrighted instruction sheet and was copied from the copyrighted work by defendant for the purpose of confusing, deceiving, and misleading the public into believing that defendant's device has its origin with the plaintiff, and that defendant's conduct constitutes infringement of plaintiff's copyright in violation of the Copyright Act, 17 U.S.C. § 1, *et seq.* The complaint also asserts claims of violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), of unfair competition, and of breach of contract. The last two claims arise under state law, and the court's jurisdiction as to them is based on the diverse citizenship of the parties.

Defendant has moved for summary judgment as to all of plaintiff's claims. For the reasons that follow, the motion is granted.

Copyright Infringement

■ To succeed in proving copyright infringement, plaintiff must prove both ownership of a registered copyright and copying of the work by defendant. *Reyher v. Children's Television Workshop*, 533 F.2d 87, 90 (2d Cir.), *cert. denied*, 429 U.S. 980, 97 S.Ct. 492, 50 L.Ed.2d 588 (1976). Because copying cannot usually be proved by direct evidence, it can be established by showing both that the allegedly infringing work is substantially similar to protectible material on the copyrighted work and that defendant had access to plaintiff's work. *Id.*; 3 Nimmer, *Copyright*, § 1301[B].

■ In the instant case, it is conceded that plaintiff's instruction sheet was covered by a duly registered copyright. How-

ever, the parties dispute both parts of the copying element: substantial similarity and access. Copying cannot be found on proof of access alone when the resulting works are not substantially similar. *Ideal Toy Corp. v. Fab–Lu, Ltd.*, 360 F.2d 1021 (2d Cir. 1966); 3 Nimmer, *Copyright*, § 13.-03[A].

■ After comparing the two works, the court may grant summary judgment for the defendant if it decides as a matter of law that no reasonable trier of fact could find them substantially similar. *Fuld v. N. B. C.*, 390 F.Supp. 877 (S.D.N.Y.1975) (Knapp, J.); *Herbert Rosenthal Jewelry Corp. v. Honora Jewelry Corp.*, 378 F.Supp. 485 (S.D.N.Y.) (Brieant, J.), *aff'd*, 509 F.2d 64 (2d Cir. 1974); 3 Nimmer, *Copyright*, § 12.10. In making such a comparison, the works themselves supersede and control any contrary allegations of the parties. *Shipman v. R. K. O. Radio Pictures, Inc.*, 20 F.Supp. 249 (S.D.N.Y.1937) (Woolsey, J.), *aff'd*, 100 F.2d 533 (2d Cir. 1938).

■ As indicated, the copyrighted work is the instruction sheet. It is of orange paper with black printing, while defendant's work is a continuous roll of non–woven white fabric with a diagram and instructions printed in blue. Defendant's product does not contain a yardage chart, while the copyrighted work does, and the former contains defendant's corporate name and address and the tradename "Jiffy Pleater." The Jiffy Pleater does contain a diagram and instructional language similar to those on plaintiff's copyrighted work. This similarity cannot be the basis of an infringement charge here, however, for it is dictated by functional considerations; instructions for applying a drapery header can be expressed only in limited ways. *See Reyher v. Children's Television Workshop, supra*, 533 F.2d at 91; *PIC Design Corp. v. Sterling Precision Corp.*, 231 F.Supp. 106, 111 (S.D.N.Y.1964) (Ryan, J.); *E. H. Tate Co. v. Jiffy Enterprises, Inc.*, 16 F.R.D. 571, 573 (E.D.Pa.1954).

---

**3.** Class A covers books, pamphlets, leaflets, cards, and single pages containing text.

In *Affiliated Hospital Products, Inc. v. Merdel Game Manufacturing Co.*, 513 F.2d 1183 (2d Cir. 1975), plaintiff owned a copyright covering the rule book for its uncopyrighted game. Defendant produced a similar game and based its rules on plaintiff's. The court held that defendant had not infringed plaintiff's copyright, because when a game is in the public domain,

[t]he rules of the game are perforce in the public domain as well. Affiliated's copyright only protects Affiliated's arrangement of the rules and the manner of their presentation, and not their content. Here, however, the simplicity of the games makes the subject matter extremely narrow, and the distinction between substance and arrangement blurs. On these facts, we hold that Merdel, although admitting to access and use of Affiliated's work, did not infringe Affiliated's copyright. Merdel did not copy Affiliated's rules verbatim, and indeed its changes enhanced the clarity of the rules. . . . We are encouraged in this conclusion through recognition of the fact that a contrary result would prevent publication of the rules of any simple game in the public domain unless the second entrant in the field developed his rules solely through watching the game being played; a result which would afford protection to the game itself.

*Id.* at 1188–89.

The *Affiliated* court cited with approval a similar holding in *Morrissey v. Proctor & Gamble Co.*, 379 F.2d 675 (1st Cir. 1967). In that case, the defendant's phrasing of rules for a contest was almost precisely similar to plaintiff's copyrighted rules. The court held that the rules were not copyrightable, because the substance of the contest was not copyrightable. *Id.* at 678. While recognizing that there was more than one way to express that substance, *id.*, the court stated:

When the uncopyrightable subject matter is very narrow, so that the topic necessarily requires . . . at best only a limited number [of forms of expression], to permit copyrighting would mean that a party or parties, by copyrighting a mere handful of forms, could exhaust all possibilities of future use of the substance. . . . In such circumstances . . . the subject matter would be appropriated by permitting the copyrighting of its expression. . . . [I]n these circumstances, we hold that the copyright does not extend to the subject matter at all, and plaintiff cannot complain even if his particular expression was deliberately adopted.

*Id.* at 678–79.

■ The reasoning of *Affiliated* and *Morrissey* apply here. The idea and design of the Custom Pleats device were not copyrighted and were, therefore, in the public domain as were the directions for its use. To forbid defendant to offer similar instructions for its similar product would result, in effect, in protecting the device itself. Moreover, as in *Affiliated, supra,* defendant's instructions were not slavish copies of plaintiff's, but were merely similar expressions of the same idea.

Having compared the copyrighted work with the Jiffy Pleater, I hold that no trier of fact could reasonably find that defendant's device is substantially similar to protectible material in plaintiff's instruction sheet. Therefore, defendant has not infringed plaintiff's copyright.

Trademark Infringement Claim

Plaintiff's third count alleges a violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).[4] The complaint alleges that de-

4. 15 U.S.C. § 1125(a) provides:

Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said

fendant's use in commerce of a "piratical" copy of plaintiff's copyrighted work constitutes a false designation of origin. This allegation is based on certain conduct of defendant's president, Sidney Levine, at the American Home Sewing Association Show in February 1978 ["Show"]. In support of its claim, plaintiff submitted the affidavit of one Stephen Rittenberg which states that at the Show, Levine exhibited to retailers a piece of buckram with markings and instructional language penciled on it, and indicated that this was a prototype of a new drapery header to be manufactured by his company as "E–Z Pleats" and priced lower than "Custom Pleats." A hand–drawn "facsimile" of the prototype, prepared by Rittenberg was submitted by plaintiff as an exhibit in support of the complaint. This facsimile is similar to the device ultimately marketed by defendant as "Jiffy Pleater."

15 U.S.C. § 1125(a) created a special and limited unfair competition remedy, *Colligan v. Activities Club of New York, Ltd.*, 442 F.2d 686, 692 (2d Cir.), *cert. denied*, 404 U.S. 1004, 92 S.Ct. 559, 30 L.Ed.2d 557 (1971), to protect users of both registered and unregistered trademarks and trade names. *Apollo Distributing Co. v. Apollo Imports, Inc.*, 341 F.Supp. 455, 458 (S.D.N.Y.1972) (Weinfeld, J.).

■ A claim for relief arises under § 1125(a) if defendant affixes to its goods any false description or representation, including a false designation of origin, *Colligan v. Activities Club of New York, Ltd.*, 442 F.2d at 692–93; *Mortellito v. Nina of California, Inc.*, 335 F.Supp. 1288, 1294 (S.D.N.Y.1972) (Gurfein, J.), in a manner likely to cause confusion or to deceive consumers into thinking that plaintiff is the source of defendant's goods. *The Berlitz Schools of*

locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

5. In *Crossbow*, the court found "palming off" in violation of New York unfair competition law and § 1125(a) where defendant used plaintiff's product with the labels imperfectly removed as a sample and demonstration model for sales of its own cheaper, inferior product.

*Language of America, Inc. v. Everest House*, 619 F.2d 211 at 215 (2d Cir. 1980); *Societe Comptoir De L'Industrie Cotonniere Establissements–Boussac v. Alexander's Dept. Stores, Inc.*, 299 F.2d 33, 36 (2d Cir. 1962); *Apollo Distributing Co. v. Apollo Imports, Inc., supra*, 341 F.Supp. at 458.

■ While defendant's prototype and plaintiff's drapery header were similar, their trade names were not. The prototype prominently displayed its own trade name. Moreover, the Jiffy Pleater which was ultimately produced set forth defendant's corporate name and address. In such circumstances, no reasonable trier of fact could find conduct by defendant likely to cause consumer confusion as to the origin of defendant's product.

In its supplemental memorandum opposing the summary judgment motion, plaintiff asserts for the first time that the Rittenberg affidavit could support a finding that at the Show, defendant took plaintiff's product, removed its trademark, embroidered defendant's indicia on the item, and used it as a demonstration model to advertise defendant's cheap imitation, thus constituting a violation of § 1125(a) under *Crossbow, Inc. v. Dan–Dee Imports, Inc.*, 266 F.Supp. 335 (S.D.N.Y.1967) (Motley, J.).[5] The Rittenberg affidavit, however, contains no such assertion. Rather, it states that Levine showed him a "prototype" of a new drapery header "which was penciled onto a brief section of a spool of buckram" and which would be marketed as "E–Z pleat."

Thus neither the complaint nor plaintiff's supporting affidavits provide factual support for a finding that defendant's conduct violated § 1125(a).

*Compare PIC Design Corp. v. Sterling Precision Corp.*, 231 F.Supp. 106 (S.D.N.Y.1964) (Ryan, J.), holding that defendant's buying of plaintiff's product, removing plaintiff's identifying mark, replacing it with its own, and reselling the item as defendant's, did not amount to unfair competition under New York law, *id.* at 113–14, although such conduct might come within § 1125(a). *Id.* at 114.

*Unfair Competition Claim*

■ Plaintiff also claims that defendant is liable under New York unfair competition law for "misappropriation" of plaintiff's property rights. This tort, first articulated by the Supreme Court in *International News Service v. Associated Press*, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211 (1918), has been found where defendant appropriates a valuable but uncopyrightable "idea" which plaintiff had uncovered by dint of great effort and expense. The misappropriation consists of defendant's use of the idea before plaintiff has the opportunity to reap its due profits.

■ Supreme Court decisions subsequent to *International News*, however, have made it clear that state laws may not forbid copying of articles which are prima facie patentable or copyrightable, but which do not measure up to federal standards of protection; such state law protection would conflict with the federal policy of allowing free copying of all articles in the public domain. *Compco Corp. v. Day–Brite Lighting, Inc.*, 376 U.S. 234, 237, 84 S.Ct. 779, 781, 11 L.Ed.2d 669 (1964); *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964); *see Riback Enterprises, Inc. v. Denham*, 452 F.2d 845 (2d Cir. 1971); *H.W. Wilson Co. v. National Library Service Co.*, 402 F.Supp. 456, 458 (S.D.N.Y. 1975) (Owen, J.). Under the *Sears–Compco* doctrine, state law may retain concurrent power to afford protection against copying only when an area is left "unattended" by federal patent and copyright law, *Goldstein v. California*, 412 U.S. 546, 570–71, 93 S.Ct. 2303, 2316, 37 L.Ed.2d 163 (1973) (sound recordings), or when state protection extends to trade secrets, *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 94 S.Ct. 1879, 40 L.Ed.2d 315 (1975); *see H.W. Wilson Co., supra*, 402 F.Supp. at 458–59, or enforces contract rights. *See Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 99 S.Ct. 1096, 59 L.Ed.2d 296 (1979).

■ Here, plaintiff's copyright protected only his instructional display sheet, not the Custom Pleats device itself, which had been deemed uncopyrightable by the Copyright Office. A state law forbidding copying of the device "would interfere with the federal policy . . . of allowing free access to copy whatever the federal . . copyright laws leave in the public domain," *Compco v. Day–Brite Lighting, Inc., supra*, 376 U.S. at 237, 84 S.Ct. at 781, and would, therefore, be void under the Supremacy Clause. *See Mortellito v. Nina of California, Inc., supra*, 335 F.Supp. at 1294, n. 8.

Implied Contract Claim

■ Under New York law, a contract will be implied in fact when the evidence shows that the parties clearly intended payment to the extent of use of the plaintiff's idea, though they did not set forth that intention in express language. *Robbins v. Frank Cooper Assoc.*, 19 A.D.2d 242, 241 N.Y.S.2d 259 (1963), *rev'd on other grounds*, 14 N.Y.2d 913, 252 N.Y.S.2d 318, 200 N.E.2d 860 (1974). A contract may be implied in law when there is no express or implied contract, but the circumstances make it inequitable for the defendant to profit from the use of plaintiff's idea or material. *Id.; Downey v. General Foods Corp.*, 323 N.Y.S.2d 578, 585, 37 A.D.2d 250, 256–57 (2d Dept. 1971), *rev'd on other grounds*, 31 N.Y.2d 56, 334 N.Y.S.2d 874, 286 N.E.2d 257 (1972).

The parties agree that on December 15, 1977, Sidney Levine phoned Terry Bressler, president of Decorative Aides Inc., requesting samples of Custom Pleats. Levine indicated that he might be interested in working with Bressler to package a drapery header. The same day, Bressler responded to this request by sending to Levine a sample of Custom Pleats, as well as a piece of drapery, the copyrighted work, and price lists. Bressler also mailed Levine a letter stating that while he doubted the feasibility of prepackaging Custom Pleats, he looked forward to a "future business relationship" with Levine.

Plaintiff maintains that defendant's solicitation implies a promise, enforceable under New York law, to pay for Custom Pleats "to the extent of defendant's use thereof."

Defendant, in contrast, characterizes plaintiff's letter as a "solicitation" of a future business relationship to which defendant did not respond, and argues that such a unilateral solicitation cannot give rise to a binding contract.

The New York cases upon which plaintiff relies for his implied contract theory all involve the submission by plaintiff, and a colorable claim of misappropriation by defendant, of an unpublished idea which plaintiff disclosed to defendant so that the idea could be commercially marketed. *See, e. g., Downey v. General Foods Corp.*, 37 A.D.2d 250, 323 N.Y.S.2d 578 (2d Dept. 1971), *rev'd on other grounds*, 31 N.Y.2d 56, 286 N.E.2d 257 (1972) (product name and marketing concept); *American TCP Corp. v. Strauss Stores*, 206 Misc. 1017, 136 N.Y. S.2d 76 (Sup.Ct., 1954), *aff'd*, 285 A.D. 1132, 140 N.Y.S.2d 884 (1955) (technical information and marketing concept); *Cole v. Phillips H. Lord, Inc.*, 262 A.D. 116, 28 N.Y.S.2d 404 (1st Dept. 1941) (idea for radio series). In all these cases, defendant's appropriation of the idea to its own commercial advantage deprived plaintiff of his expectation of profit. The courts found that an implied contract theory was stated because defendant has violated plaintiff's common law copyright.

 In the instant case, plaintiff did not submit an idea or trade secret to defendant, but a sample of his product and his copyrighted instruction sheet, both of which were readily available in the marketplace. Unlike the implied contract cases cited above, plaintiff was already exploiting his product commercially. Defendant's copying of the Custom Pleats device, if there was any, did not deprive plaintiff of the right, protected by common law copyright, to "publish" his idea first. *See Samet & Wells, Inc. v. Shalom Toy Co., Inc.*, 429 F.Supp. 895 (E.D.N.Y.1977), *aff'd*, 578 F.2d 1369 (2d Cir. 1978); *Paulsen v. Personality Posters, Inc.*, 59 Misc.2d 444, 299 N.Y.S.2d 501 (Sup. 1968). Once an idea is published by the author without federal copyright protection, it loses its common law protection and becomes the property of the general public. *See Shaw v. Williamsville Manor, Inc.*, 330 N.Y.S.2d 623, 38 A.D.2d 442 (4th Dept. 1972); *Hemingway's Estate v. Random House, Inc.*, 296 N.Y.S.2d 771, 244 N.E.2d 250, 23 N.Y.2d 341 (1968). Therefore, defendant was free, under both New York and federal law, to copy the Custom Pleats device at the time plaintiff sent its material.

 In this case, defendant vigorously denies any promise to compensate plaintiff, thus precluding recovery based on a contract implied in fact. And since federal policy clearly allows copying of unprotected articles, see *Sears, Compco* and their progeny, it would not have been inequitable for defendant to have imitated plaintiff's product in these circumstances. Since the facts cannot, as a matter of law, support a conclusion that defendant violated any property right of plaintiff's, there is no basis for implying a contract in law to impose upon defendant a duty to compensate plaintiff.

IT IS SO ORDERED.